UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GABRIEL ALLEN ECKARD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SCOTT SYMONS,<br><br>　　　　　Defendant. | Case No. 19-376-RSL<br><br>REPORT AND RECOMMENDATION |

## I.　　INTRODUCTION AND BACKGROUND

This is a 42 U.S.C. § 1983 prisoner civil rights action. Plaintiff alleges that Defendant, a Washington State Department of Corrections ("DOC") Corrections Officer, used excessive force against him on June 1, 2018, while he was a prisoner at the Monroe Correctional Complex ("MCC"). (*See* Dkt. # 5.) On September 4, 2018, Plaintiff was released from DOC custody. (*Id.* at 4.) He is now detained at the Snohomish County Jail. (*Id.* at 1.)

Currently before the Court is Defendant's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (Dkt. # 14; *see also* Dkt. # 20.) Plaintiff opposes the motion. (Dkt. # 17.) Having considered the parties' submissions, the balance of the

1  record, and the governing law, the Court recommends that Defendant's motion for summary

2  judgment be GRANTED and this action be DISMISSED without prejudice.

3  **II.     DISCUSSION**

4  **A. Legal Standards**

5  Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust "available"

6  administrative remedies before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Albino v.*

7  *Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc); 42 U.S.C. § 1997e(a) ("No action shall be

8  brought with respect to prison conditions under section 1983 of this title, or any other Federal

9  law, by a prisoner confined in any jail, prison, or other correctional facility until such

10  administrative remedies as are available are exhausted."). The prisoner must complete the

11  administrative review process in accordance with the applicable rules. *Woodford*, 548 U.S. at 92-

12  95 (requiring "proper" exhaustion, meaning full compliance by a prisoner with all procedureal

13  requirements of an institution's grievance process).

14  Defendant bears the initial burden of showing that there was an available administrative

15  remedy and that Plaintiff did not exhaust that remedy. *Albino*, 747 F.3d at 1169, 1172. Once that

16  showing is made, the burden shifts to Plaintiff, who must either demonstrate that he, in fact,

17  exhausted administrative remedies or "come forward with evidence showing that there is

18  something in his particular case that made the existing and generally available administrative

19  remedies effectively unavailable to him." *Id.* at 1172. The ultimate burden, however, rests with

20  Defendant. *Id.*

21  Summary judgment is appropriate if the undisputed evidence, viewed in the light most

22  favorable to Plaintiff, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

23

Any unexhausted claims should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1162.

### B. MCC's Grievance Procedures

Defendant has submitted the following evidence regarding the MCC's grievance program. The program is managed in accordance with the DOC grievance policy and the Offender Grievance Program Manual. (Dkt. # 14 at 14, ¶ 3.) Inmates receive an orientation to the grievance procedure upon their arrival at the facility. (*Id.* at 14, ¶ 5.) Grievance complaint forms are made available to all inmates and copies of the manual are maintained in the prison law library. (*Id.*)

Under the program, inmates may file grievances on a wide range of issues relating to their incarceration, including the actions of staff and retaliation by staff for filing grievances. (*Id.*) Inmates have twenty working days from the date of an incident to file a grievance, unless there is a valid reason for additional delay. (*Id.* at 16, ¶ 7.) Inmates file their grievances by placing them in locked grievance boxes located in the housing units, which they can access when they are out of their cells. (*Id.* at 15, ¶ 5.) Inmates in segregation units who do not have access to a locked grievance box may give grievances directly to corrections officers for filing. (*Id.*)

The grievance procedure consists of four levels of review:

Level 0 – The grievance coordinator receives a written complaint from an inmate and pursues informal resolution; returns the complaint to the inmate for rewriting, for additional information, or because the complaint is non-grievable; or accepts the complaint and processes it as a formal grievance. (*Id.* at 15-16, ¶ 6.) An inmate may need to rewrite a grievance when, for example, he has not written a simple, straight-forward statement of concern or when the complaint contains more than one issue. (*Id.* at 17, ¶ 9.) A complaint that is returned for

rewriting must be resubmitted within five days or by a date set by the grievance coordinator. (*Id.* at 16, ¶ 6.) A complaint that is not timely resubmitted is deemed administratively withdrawn and unexhausted. (*Id.* at 17, ¶ 11.) When a complaint is returned as non-grievable, the inmate may request a review by the grievance program manager. (*Id.* at 16, ¶ 6.)

Level I – Routine grievances about policies, procedures, or other inmates are initiated as Level I grievances. (*Id.*)

Level II – An inmate may appeal a Level I grievance to Level II, if he does so within five working days from the time he receives the response to his Level I grievance. (*Id.* at 16, ¶ 7.) Grievances about staff conduct are initiated as Level II grievances. (*Id.* at 16, ¶ 6.)

Level III – An inmate has five working days from receiving a response to his Level II grievance to file a Level III appeal to the DOC Headquarters. (*Id.* at 16, ¶¶ 6-7.) An inmate cannot appeal a Level III decision. (*Id.* at 17, ¶ 7.)

## C. Plaintiff Did Not Exhaust his Administrative Remedies

Defendant has submitted evidence that Plaintiff timely filed a grievance regarding the excessive force alleged in this lawsuit. (Dkt. # 14 at 18, ¶ 14; *id.* at 20.) The grievance was initially rejected, with a re-write requested by the grievance coordinator. (*Id.* at 20.) Plaintiff filed a response, and the grievance was accepted as a Level II grievance on June 19, 2018. (*Id.* at 21.) The DOC's Level II grievance response was sent to Plaintiff on July 18, 2018. (*Id.* at 22.) The response informed Plaintiff, "You may appeal this response by submitting a written appeal to the coordinator within five (5) working days from the date this response was received." (*Id.*) Plaintiff filed an *untimely* Level III appeal on July 29, 2018. (*Id.* at 23.) He did not offer an explanation for why the appeal was late. (*See id.*) The grievance coordinator did not accept his appeal because it was filed six days after the deadline. (*Id.*) This evidence satisfies Defendant's

initial burden of showing that there was an available administrative remedy and that Plaintiff did not exhaust that remedy because he did not complete the grievance process in accordance with the applicable rules. *See Woodford*, 548 U.S. at 92-95.

Plaintiff raises several arguments in response. First, Plaintiff argues that he was not required to exhaust his administrative remedies because he does not qualify as a "prisoner" under the PLRA. (Dkt. # 17 at 1.) Judges in this District have already rejected this argument from Plaintiff:

> The definition of "prisoner" in regards to the PLRA is explicit: "As used in this section [28 U.S.C. § 1915], the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. 28 U.S.C. § 1915(h); *see also* 42 U.S.C. § 1997e(h) (identical language). Hence a civil litigant is a "prisoner" if he or she is "currently detained as a result of accusation, conviction, or sentence for a criminal offense." *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000).
>
> Plaintiff is a "prisoner" because he is detained at the Snohomish County jail, pending the adjudication of criminal charges or serving a criminal sentence. The fact plaintiff is no longer detained in the Department of Corrections is irrelevant because this does not alter the plain fact that plaintiff is a "prisoner" as the term is used under the PLRA, when he filed the instant complaint, and is still a "prisoner."

*Eckard v. Caraway*, No. 19-cv-375-RSM-BAT, Dkt. 6 (W.D. Wash. Mar. 15, 2019) (Report and Recommendation); *id.*, Dkt. 8 (Apr. 25, 2019) (Order Adopting Report and Recommendation). Judge Tsuchida's analysis in the above case is persuasive and the Court adopts it here.

Second, Plaintiff argues that because he is currently detained at the Snohomish County Jail, the DOC's administrative remedies are no longer "available" to him. (Dkt. # 17 at 5.) But Plaintiff had an opportunity to exhaust his administrative remedies while he was in DOC custody. The alleged excessive force occurred on June 1, 2018, and he was not released until

1  September 4, 2018. The fact that he is now at the Snohomish County Jail does not make the

2  DOC's administrive remedies unavailable within the meaning of the PLRA.

3  Third, Plaintiff asserts that the DOC's administrative remedies were not "available" to him because he was not given an orientation to the Offender Grievance Program, he never received a copy of the Offender Grievance Program Manual, and he did not have access to the law library where he could have reviewed the manual. (Dkt. # 17 at 9; Dkt. # 18 at 1 ("Because I had not had an orientation to the Grievance Policy as required by policy or access to a law library to review the Grievance Policy, I was not aware of the entire grievance process or the appeal procedure.").) However, "[a] plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 221 (6th Cir. 2011) (citations omitted); *see also Miller v. Najera*, No. 12-1288, 2017 WL 6538998, at *6 (E.D. Cal. Dec. 21. 2017) ("Ignorance of the grievance process is generally not sufficient to show that remedies were unavailable, as inmates are expected to make a reasonable, good faith effort to discover and exhaust the appropriate procedure. *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010)."). Therefore, the Court concludes that Plaintiff's alleged[1] lack of knowledge did not render his administrative remedies unavailable.

Finally, Plaintiff argues that his administrative remedies were "unavailable" because "prison guards actively frustrated his attempts at litigation by confiscating his materials among other means of retaliation." (Dkt. # 17 at 9.) In his accompanying declaration, Plaintiff states, "Because of prison guards['] efforts to frustrate my ability to file grievances I was not able to

---

[1] The Court notes that Defendant submitted unrefuted evidence that Plaintiff filed more than 500 grievances while at the MCC between May 2013 and September 2018. (Dkt. # 14 at 18, ¶ 13; *id.* at 25-36.) Plaintiff pursued at least a handful of those grievances to a Level III appeal. (*Id.* at 27-28, 30-31, 33-34.) The Court further notes that Plaintiff referenced the Offender Grievance Program Manual in his Level II grievance (*id.* at 21 ("The OGM page 16, line 15 reads . . .")), and the DOC's Level II response informed Plaintiff, "You may appeal this response by submitting a written appeal to the coordinator within five (5) working days from the date this response was received." (*id.* at 22).

appeal in a timely fashion." (Dkt. # 18 at 1.) This vague and conclusory statement lacks any details regarding the alleged interference and is insufficient to establish a genuine issue of material fact for trial. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements"); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (vague and conclusory allegations are not sufficient to withstand a motion for summary judgment).

Plaintiff goes on to attest that while he was in the intensive management unit, staff would "routinely" confiscate his grievance forms when they conducted searches of his cell and sometimes threaten him to deter his efforts to file grievances or litigation. (Dkt. # 18 at 1-2.) But he does not tie these general allegations of misconduct to the untimely Level III appeal in this case. Rather, he specifically recounts cell searches that occurred on March 13, 2018, and April 30, 2018, well before his Level III appeal was due in July 2018. (*See id.* at 2.) Even assuming the truth of his allegations that staff routinely confiscated his grievance forms and threatened him, such general statements stop short of providing an explanation for why he filed *this* Level III appeal late. The Court thus concludes that they are insufficient to defeat summary judgment.

In sum, viewing the evidence in Plaintiff's favor, the Court concludes that Defendant is entitled to summary judgement based on Plaintiff's failure to exhaust his available administrative remedies.

**D. Dismissal of This Action Should Not Count as a "Strike"**

Defendant asks the Court to find that dismissal of this action constitutes a "strike" under the PLRA's "three strikes" rule. (Dkt. # 20 at 6-7.) "The PLRA's 'three-strikes' rule prohibits a prisoner from filing an action *in forma pauperis* (IFP) if he has accumulated three 'strikes' for

REPORT AND RECOMMENDATION - 7

prior federal-court actions while incarcerated or in detention, unless he is 'under imminent danger of serious physical injury.'" *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1051 (9th Cir. 2016) (quoting 28 U.S.C. § 1915(g)). "A prisoner can incur a 'strike' for bringing an action 'that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.'" *Id.* (quoting 28 U.S.C. § 1915(g)).

The Ninth Circuit has explained that whether a dismissal for failure to exhaust counts as a strike turns on whether "the district court considered documents outside the four corners of the complaint." *El-Shaddai v. Zamora*, 833 F.3d 1036, 1043-44 (9th Cir. 2016). Thus, if a case is dismissed because the failure to exhaust was clear on the face of the complaint, and no outside evidence was considered in reaching that determination, the dismissal counts as a strike. *Id.* But if a court grants summary judgment for failure to exhaust and in reaching that conclusion considers material outside the complaint, such a dismissal does not count as a strike. *Id.* Because the Court granted summary judgment based on materials outside the four corners of the complaint, the dismissal of this action should *not* count as a "strike" under § 1915(g).

### III.   CONCLUSION

The Court recommends that Defendant's motion for summary judgment (dkt. # 14) be GRANTED and this matter be DISMISSED without prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed nine pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are

served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

Dated this 5th day of August, 2019.

_____
MICHELLE L. PETERSON
United States Magistrate Judge